People v Lopez (2025 NY Slip Op 52114(U))

[*1]

People v Lopez

2025 NY Slip Op 52114(U)

Decided on December 21, 2025

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 21, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

againstC. Lopez, Defendant.

Docket No. CR-013173-25BX

For the Defendant: 
Dominique Perez & Caroline McGrath (The Legal Aid Society)For the People: 
Bronx ADA Rachel Ehrlich

David L. Goodwin, J.

Via a counseled omnibus motion, defendant C. Lopez [FN1]
moves primarily to reargue my bench decision from September 10, which validated the People's certificate of compliance (COC) and directed the People to turn over certain documents. Lopez contends that, in doing so, I made errors of law or fact that warrant a second look at whether the People's COC was truly valid.
Upon review of the motion and record, I am not persuaded that I overlooked any relevant facts or law, or erred in reaching my ultimate outcome. Acknowledging the summary nature of bench rulings, and mindful of the Appellate Term's preference for a developed record, see People v. Martinez-Perez, 87 Misc 3d 130(A), 2025 NY Slip Op. 51648(U), at *1 (App. Term, 1st Dept. 2025), I expand below on my original reasoning, but ultimately DENY relief.[FN2]
I. Background
a. Arraignment through Discovery ComplianceThe parties are the primary audience and are familiar with the facts of this case. In brief, defendant Lopez was charged via a May 6, 2025 accusatory instrument with allegedly grabbing his mother and pushing her against a wall, causing her to strike her head. The mother told officers that in the aftermath, she suffered substantial pain to her head and experienced headaches. See Accusatory Instrument at 1—2.
Lopez was arraigned the next day, on May 7. The mother signed a supporting deposition on May 22.
The People certified their discovery compliance and declared ready on July 18, either 73 or 74 days into the case (depending on when the accusatory instrument was first filed). According to their COC, the People had provided, among other things, activity logs and body-camera footage for eight officers, a Giglio impeachment packet for the two officers who were anticipated to testify at trial, and 911 materials. See People's Resp., Ex. A (COC) at 6—7. As will be significant later, the COC did not mention the mother's medical records, or disclose that they were outstanding.
b. The Parties' ConferralThe defense lodged objections via email on August 21, a little over a month later. Defense counsel requested several items that had been referenced or seemed apparent from the body-camera footage: the mother's medical records, home video allegedly taken of the incident, and a photograph one of the testifying officers took at the scene. Counsel also requested that the People provide certain missing items of discovery: a pre-hospital care report and medical-treatment-of-prisoners form from Lopez's own pre-arraignment trip to the hospital; the arraignment card; and body-camera footage from at least three post-incident home visit attempts from May 10, May 16, and May 29. See People's Resp., Ex. C at 3—4.
The People responded on September 5. Relevant here, the assigned ADA attached the mother's medical records, which (according to the ADA) had first been subpoenaed by mail [*2]around May 22. The People had learned only recently that the original subpoena was never received and, after submitting a new subpoena, received the records. The ADA was otherwise trying to get in touch with the testifying officer, who was not available; had emailed the discovery liaison from the precinct regarding the medical treatment of prisoner forms; and had reached out to the relevant officer for materials related to the post-incident home-visit. Finally, the ADA attached the arraignment card. See id. at 2.
The ADA was able to obtain activity logs and body-camera video from the home visits within the next four days. They were shared with the defense on September 9. See id. at 1. As of September 26, however, the People were still not in receipt of the materials from the testifying officer or the medical-treatment-of-prisoner form. See id.
c. The Discovery Conference and COC ValidationThe parties appeared before me for a September 10 discovery conference, at which I ultimately validated the COC. At that conference, the defense framed the potential COC issues as reaching (1) the medical records, (2) the home-video footage, (3) the photograph taken by the officer, (4) Lopez's own hospital paperwork, and (5) the activity logs and body-camera footage for the post-incident home visits. Tr. at 3.[FN3]

1. The Medical Records
As to the mother's medical records, defense counsel argued that the People's efforts to obtain them—subpoenaing them on May 22, but then not following up until after declaring ready—did not amount to due diligence. According to defense counsel, the medical records were automatically discoverable under C.P.L. § 245.20(1)(j) as reports and (1)(k)(iv) as impeachment material, and were within the custody of "the police and the FDNY." Tr. at 5—6. In support of the argument for discoverability, defense counsel relied on the Appellate Term decision in People v. Rahman, 79 Misc 3d 129(A), 2023 NY Slip Op. 50692(U) (App. Term, 2d, 11th, & 13th Jud. Dists. 2023), and trial court decisions in People v. Witts, People v. McDonald (both unpublished, but provided by defense counsel), and People v. Ajunwa, 75 Misc 3d 1220(A), 2022 NY Slip Op. 50626(U) (N.Y.C. Crim. Ct., Bronx Co. 2022) (Licitra, J.). Tr. at 4. Counsel otherwise had no way to obtain the records because the mother was not her client. Tr. at 7.
The People responded that these records were not within their custody and control because the mother went to a private medical care center on her own initiative a day or two after the incident. Tr. at 6. The People nevertheless had obtained a HIPAA release form and subpoenaed the records, which ordinarily take a long time to be processed. However, when the People followed up after receiving the defense discovery objections, they learned that their mailed subpoena had never arrived; upon resending the subpoena by fax, the People were "able to get . . . those records pretty immediately" and send them to defense counsel. Tr. at 6—7. 
After hearing from the People, I pressed the defense on why these materials were in the People's possession or control. Defense counsel pointed to McDonald, which in her view stood for the proposition that the People are required to follow up on discovery requests, but which in [*3]my reading seemed to limit that statement to requests to the NYPD or other entities defined as within the People's control. Tr. at 8. Defense counsel also suggested that medical records would be required for the People to proceed because headaches need to be authenticated in order to prove physical injury; I observed that the mother's testimony might also suffice. Tr. at 9—10.
2. The Home-Video Footage
Regarding the home-video footage that was mentioned in the body-camera footage, defense counsel argued that it was within the People's custody and control because it was from the mother's phone (or, alternately, from "cameras" in the "hallway of her home"). Tr. at 11. The People responded that they had asked the mother close to the event whether she had anything, and she said that she no longer had a photograph taken that showed damage to the wall, although the People conceded that they had not asked her about the possible video footage until recently. Tr. at 12.
3. The Scene Photograph
Regarding the photograph taken by the officer at the scene as depicted in the body-camera footage, defense counsel again emphasized that any photographs taken by officers would be within the People's custody and control, although counsel conceded that it was unclear what the photograph was of. Tr. at 12—13. The People responded by pointing to the difficulty in getting in touch with the officer in question, but also said that the relevant photograph may already have been provided, as it was not clear what the officer had been referring to in the footage. Tr. at 13.
4. Lopez's Hospital Paperwork
Regarding Lopez's own prearraignment trip to the hospital, the People responded that there appeared to be no documents relevant to such a trip, although they were waiting on the arresting officer to clarify. Tr. at 13—14.
5. Logs and Footage from Post-Incident Home Visits
Finally, regarding the activity logs and body-camera footage from the post-incident home visits, the People responded that all three visits were unsuccessful, as made clear in DD5s that had already been provided to the defense; "[i]t's just officers knocking on the door and returning." Tr. at 14. The People had nevertheless turned over the logs and footage; defense counsel clarified that her argument was that the People should have turned them over before declaring ready. Tr. at 14—15.
6. Decision Validating COC
After hearing from the parties on each of these issues, I determined that the COC was valid:
I think at this time, I am going to validate the COC. Here's why.I believe what was disclosed, it seems pretty extensive. I think the centerpiece of your request, [defense counsel], was about those medical records. I certainly agree with you that they are very important when they exist, and perhaps additional efforts could have been made to get them. I'm not entirely sure whether you need a HIPAA subpoena. I know often, the folks have them, but I don't know when you've got HIPAA colliding with a judicial order, how quite that works offhand.But it doesn't seem like it was in the People's custody and control, and while I think they probably should have done it sooner, I'm not quite willing to find that lack of diligence, if there was any, invalidates the COC. . . . [T]hey did eventually get it, stuff was eventually provided, and I think the People could have validly declared ready even without it because absent medical records, you still couldn't [sic; "could've"] prove a case under testimony of a witness.Regarding the home video footage, the single photo taken by the arresting officer. And I think those are the two things that still sound like they were outstanding, and I direct the People to continue inquiring of [the officer] to see whether they could be obtained. It sounds like there might be some home video, there might not be some home video references made to it. That does not mean it exists, or even if it did, that it still exists. But that doesn't mean the People can't try to get that. Again, the People are directed to try to obtain that material, even to the extent it's not in their custody and control. I'm directing that as a matter of discretion.The COC is otherwise deemed valid.Tr. at 16—17. In response to a question from the defense about the hospital paperwork, I clarified:Yes. I'm sorry. So if there is, in fact, hospital paperwork, the People are directed to obtain that as well. Thank you for clarifying.Tr. at 17. Defense counsel sought an adjournment for possible disposition before setting an omnibus motion schedule. Tr. at 18.
d. The Motion to ReargueDefense counsel then moved to reargue my decision via this October 22 omnibus motion.[FN4]
It is fully briefed. For simplicity's sake, I address each argument below rather than teeing them up here.[FN5]

II. Legal Standard and Discussion
Reargument is discretionary, warranted only if "the court overlooked or misapprehended the relevant facts or misapplied any controlling principle of law." Springs v. L&D L. P.C., 234 AD3d 422, 424 (1st Dept. 2025); see 23rd Chelsea Assocs. LLC v. Stone, 80 Misc 3d 130(A), 2023 NY Slip Op. 51020(U), at *1 (App. Term, 1st Dept. 2023). It cannot be used to relitigate issues already decided or to present "arguments different from those originally asserted." Setters v. AI Properties & Devs. (USA) Corp., 139 AD3d 492, 492 (1st Dept. 2016) (internal quotation marks and citation omitted).
Beginning with the medical records, the defense argues that I overlooked that the People were required to disclose the medical records before filing their COC, and in any event were required to make diligent efforts to obtain the medical records under C.P.L. § 250.20(2). And even if the People wished to prove their case through witness testimony, as opposed to the records themselves, the records could be impeachment material under § 245.20(1)(k) because they appeared to potentially contradict the mother's claim that she experienced headaches, and were therefore automatically discoverable. The defense further asserts that these outcomes are required by Matter of Jayson C., 200 AD3d 447 (1st Dept. 2022); the defense also cites People v. Delacruz, Witts, Rahman and Santamaria, the latter few for the principle that "medical records of the complainant were automatically discoverable." Defense's Mot. at 10. Finally, the defense contends that the People should have noted the missing discovery in their COC, which they did not, and that the People's disclosure of the material amounted to an admission that the records were discoverable. See id. at 10—11.
There are a few threshold problems with this line of argument, the main one being that several of these points were not advanced at the discovery conference. The defense did not mention Jayson C. at the conference, for instance, or take issue with the absence of the medical records from the People's COC. And as the People's point out in their response, see People's Resp. at 9, some of the relied-on cases do not say what the defense asserts. For instance, Delacruz observed that medical records were not within the People's control, see Defense's Mot., Ex. B at 2, and Witts did the same, see id., Ex. C at 5. Any new issues that could have been raised before are not properly before me now. See Setters, 139 AD3d at 492.
In any event, nothing here changes my mind about whether the People acted appropriately without the bounds of the arguments advanced at the original hearing. Regardless of whether the medical records were potential impeachment material or test results under § 245.20(1)(k) and (j), only material that is "in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" is subject to initial automatic discovery under the current and former versions of § 245.20(1).[FN6]
Thus, whether the materials [*4]would have been discoverable as impeachment material or records is secondary to whether they were within the People's possession. See People v. Walker, 232 AD3d 1214, 1215 (4th Dept. 2024) ("The prosecution's initial discovery obligations are thus defined by a relevancy prong and a possessory prong . . . .").
None of the cited authority, binding or otherwise, persuades me that the records were within the People's actual or constructive possession, or that the People's attempts under § 245.20(2) fell short (to the extent that is legally relevant, see note 6). Jayson C. is not on point, for instance, because its holding about impeachment evidence in the context of Family Court proceedings says nothing about the People's actual or constructive possession of that material. To the contrary, Jayson C. addressed disclosure of material held by the presentment agency—in other words, the prosecuting authority. See Jayson C., 200 AD3d at 448; see also Fam. Ct. Act § 301.2(12) ("'Presentment agency' means the agency or authority which pursuant to section two hundred fifty-four or two hundred fifty-four-a is responsible for presenting a juvenile delinquency petition.").
Here, there is no suggestion that the People actually held the records. The mother went to a private medical center on her own accord, not at the direction of or with the assistance of police. Cf. Rahman, 2023 NY Slip Op. 50692(U), at *1—2 (considering those factors as relevant to discoverability). And while the People could have done more to obtain the records, such as by following up in a timely fashion, there appears to be no dispute that they subpoenaed the records shortly after this case began, which compares favorably to those cases where the People did not seek the records until after certifying ready. Cf. Ajunwa, 2022 NY Slip Op. 50626(U), at *3 (concluding the People did not make reasonable efforts to obtain records under § 245.20(2) when they did not subpoena them until after certifying ready). And in any event, the People swiftly provided the records to the defense after receiving the defense's discovery objections, without the need for court intervention—a diligence factor that weighs in the People's favor. See C.P.L. § 245.50(5)(a).
Contrary to the defense's argument, the People's decision to subpoena the records, and to make them available, does not function as a concession that the records were within their control and discoverable. The People are always free to provide more than what the discovery statute requires. And to the extent it is properly raised, the defense argument that the medical records would be required for the People to meet their burden at trial appears to be without merit; as I observed at the discovery conference, a complaining witness's testimony can itself suffice to establish the physical injury element of assault. See People v. Guidice, 83 NY2d 630, 636 (1994); People v. Newman, 71 AD3d 1509, 1510 (4th Dept. 2010).
The defense next argues that the People's COC should have been invalidated because the People did not turn over the post-incident home-visit activity logs. Here, I may have erred in part by not specifically mentioning the activity logs and body-camera footage during my initial ruling, although I meant to do so. Still, though, this issue does not require a different outcome. Although the defense motion is framed as if the logs and footage are still outstanding, see Defense's Mot. at 12—13, the People represented at the conference that they had been turned over, which defense counsel acknowledged. See Tr. 14—15. The People maintain that position now. See People's Resp. at 9—10.
In any event, and assuming without deciding that the logs and footage were automatically discoverable, the People asserted at the conference that they showed nothing of substance because the home visits were unsuccessful, and the defense provides no reason to believe [*5]otherwise. See Tr. 15—16. Accordingly, the People have met their burden of showing that this particular material was "insignificant" and otherwise dwarfed by the volume of material otherwise disclosed. C.P.L. § 245.50(5)(a). 
Finally, the defense argues that at least one relevant domestic incident report has not been disclosed. But that never came up at the conference, and as explained in note 2, truly "new" issues are beyond the scope of this motion and decision. In any event, the record does not provide enough to clarify whether there has been any conferral about this issue.
While the defense motion mentions the other remaining issues from the conference in the introductory material, see Defense's Mot. at 5, no specific arguments are made pertaining to that material. The People nevertheless confirm either that the material did not exist or has since been provided. These issues, too, do not warrant a different outcome.

 * * *
The relief requested by the defense is DENIED for the reasons set forth above. The other branches of the motion are also DENIED.
Dated: December 21, 2025Bronx, NYDavid L. GoodwinJudge of the Criminal Court

Footnotes

Footnote 1:The version of this decision submitted for electronic publication has been lightly redacted to remove certain identifying information.

Footnote 2:I may technically be granting reargument in whole or in part and adhering to my original decision. See MRJA Radiology, P.C. v. Praetorian Ins. Co., 49 Misc 3d 128(A), 2015 NY Slip Op. 51381(U), at *1 (App. Term, 1st Dept. 2015) ("The order purporting to deny defendant's motion to reargue addressed the merits and, in doing so, in effect, granted defendant's motion . . . ."). I leave the task of labeling to someone else.

However, I am not treating this as a motion to renew. The notice of motion calls the relevant branch a motion to reargue and, outside of one stray (and potentially inadvertent) reference, see Defense's Aff. 7, the motion refers to itself internally as a motion to reargue. While I rely largely on my inherent authority to reexamine prior decisions, see People v. Lawson, 43 NY3d 939, 942 (2024), the rule governing these motions in civil practice, C.P.L.R. § 2221(d)—(f), requires them to be clearly labeled as to the relief sought—a sensible practice, especially for counseled motions, and one I adopt here. This is not at odds with my "consideration" of the back-and-forth conferral between defense counsel and the assigned ADA, as (1) this conferral was mentioned at the discovery conference and (2) is referenced mostly for background.

The one "new" issue I consider for the sake of expediency, and with which I summarily dispense, is that the instrument should be dismissed under § 30.30 because the People did not file a supplemental COC. See Defense's Mot. at 15—17. I am not persuaded that any technical failure in swiftly filing a supplemental COC would, in the circumstances of this case, render the People unready for trial and thus restart the § 30.30 clock.

Footnote 3:The minutes are attached as Exhibit A to the defense's motion to reargue.

Footnote 4:Although the motion is captioned as an "omnibus motion," Defense's Mot. at 1, defense counsel did not seek hearings—only limited other relief. I leave to the next judge whether the defense has forfeited a request for hearings.

Footnote 5:The defense uses its reply to litigate, for the first time, the People's overall record of diligence and outreach under the Bay factors. See Defense's Reply at 6—7. But a reply brief on reargument/rehearing does not appear to be the right first place to raise a set of diligence factors that the People have never been asked to address. Nevertheless, were I to consider all of those factors, as well as the factors from the revised § 245.50, I would still adhere to my original decision that the People exercised appropriate diligence.

Footnote 6:This poses another issue, as the Third and Fourth Departments appear to have held that only initial discovery obligations are relevant to the validity of a COC and, by extension, that a COC generally cannot be invalidated based on an alleged § 245.20(2) failure to obtain discovery not within the People's possession or control. See People v. Branton, 238 AD3d 1429, 1431 (3d Dept. 2025); People v. Radford, 237 AD3d 1511, 1512 (4th Dept. 2025). My ruling would stand even without this line of doctrine.